There are three main errors that the Patent Trial and Appeal Board committed in each of these combined appeals. One, the board improperly found obviousness based in part on disclosures in the prior references that are vague or uncertain. Despite the law holding that vague or uncertain disclosures are not disclosures at all for purposes of invalidity. Two, the board repeatedly relied on just the conclusory say-so of petitioner's expert to support its findings, ranging from that expert's characterization of the prior art to his reasonable expectation of success, to his reasons for combining the prior art. And three, when the patent owner called out petitioner's bare expert conclusions in the petition, the board allowed petitioners a do-over in their reply. But worse, the board did so without allowing the patent owner any substantive opportunity to argue why the new reply evidence was improper. Just a bare listing. Also, no opportunity to file a surreply where we could have provided rebuttal evidence to explain why the petitioner's new evidence was incorrect, or any reasoned decision in which it explained why it believed that the new reply evidence was improper on an item-by-item basis. So, Your Honor? So, I just want to follow up on the last thing. So, you – the board conclude – you say the board failed to give you notice of and fair opportunity to respond to the grounds of invalidity. So, they come in and they reply, and they're replying to your response – to you. Yes, Your Honor. And you're saying – and then you object to what they're saying. Yes, Your Honor. And it's the board – we all agree. It's the board that has to evaluate whether or not you're correct that these were totally new arguments. I mean, the board cannot allow totally new arguments, or else it would have to give you an opportunity for a surreply. So, I'm not – I guess I'm not entirely clear on what you're saying – where you're saying the board erred. The board did evaluate whether or not these were new arguments, right? Yes. Okay, so what's wrong? So, the board's error was three-pronged. One, it didn't give us a substantive opportunity to argue or explain why we believed those were not proper reply arguments. So, this is kind of different. It's not that – I mean, the board evaluated it. The board made an evaluation. Yes. So, your – is your complaint – why is your complaint a process claim? If your argument is that the board was wrong, the board clearly evaluated whether or not these were new arguments, and it concluded they weren't new arguments. Yes. So, you're using that as a – yours is a due process argument, not a substantive argument? Yes, Your Honor. Exactly, Your Honor. It's – I mean, there's also the de novo review of whether or not these were, in fact, new arguments or not. But, in addition, we have a due process and APA violation that we were not given an opportunity to provide argument as to whether or not the evidence was new or not. Then, when the board issued its final written decision, it basically – You said that's de novo. I thought we were on abuse of discretion. Actually, whether or not the arguments are new or not is de novo. That was found by the board in – let me see. That was in the In Re Nuvasive case, 841 F3D at 970. That whether or not the ground the board relied on was new, requiring a new opportunity to respond, is a question of law subject to de novo review. So, was there any response in the final briefing? So, we were not given a chance for any additional briefing. We asked for a cert reply. That was denied. And so, we were not allowed any opportunity to submit any rebuttal evidence, such as expert testimony that could have explained why the petitioner's new reply expert testimony was incorrect. Then, in addition, when the board issued its final written decisions, there was just a single footnote in each one of them saying, we evaluated the challenges to the new evidence, and I'm paraphrasing, and we find them to be proper. That was it. So, we had no idea why they believed that each of the items that we had challenged were proper responses or not. In their motion – in their reconsideration decision, they provided a little bit more explanation. Basically, just citing the law, saying that, well, a petitioner's allowed to respond to what the patent owner said. They never addressed, on an item-by-item basis, as to why that was true for each of the challenged items of new evidence or argument. But, essentially, what the board appeared to be finding is that petitioner basically had conclusory statements. Just, like, for example, in one instance, their expert said that Milbrandt's reference to subfrequency is the same thing as the claimed subchannel, period. That was all he said. We challenged that as being merely conclusory, but then, in addition, we came back and said, on top of that, here are a bunch of technical reasons from our expert as to why that conclusory statement is wrong. So, the board appeared – Was that – that was in the argument that you stated what your expert had said? Yes. It was contrary? Yes, Your Honor. Okay. And so, the board is either apparently finding that once a patent owner says, you have no evidence, that it is then a proper reply to then provide that evidence for the first time on reply, even though that the patent owner would then have no chance to rebut it at that point. Or, the board seems to be suggesting that there's some sort of catch-22 decision, that if a patent owner chooses to both say, petitioner, you have no evidence, and, by the way, here is some of our rebuttal evidence, that that somehow opens the door for the patent owner to then basically get a do-over on reply. Now, the Federal Circuit, in the Intelligent Biosystems case, held that the evidence necessary to support patentability has to be in the petition. And there's a reason for this because, until recently, the board was not allowing SIR replies. Yeah, but all the arguments and everything that – I mean, you get to respond and they get to respond to you. So, it can't be that everything – the petitioner's only opportunity to speak at all on any of these issues is in the petition, right? No, Your Honor. Yes, that is correct, but at the same time, Your Honor, the petitioner cannot be making its prima facie case for the first time on reply, particularly if it's relying on new evidence and new arguments that we then don't get a chance to rebut. Like, for example, the argument on sub-frequency versus sub-channel. That is something that petitioners recognized they needed to prove in the petition, and so they had their expert say that those two things are the same, but that's all he did. They are the same, period. And so, that is something that they needed to prove for their prima facie unpatentability case. Okay, so I'm just – these are my notes from reading your briefs. But what the board relied on, on that particular issue on sub-frequencies and sub-channels, is a disclosure in Milbrandt. That must have been in the petition or in this case somewhere. You're not arguing that was new argument? No, Your Honor. Okay, so that's one of the things they relied on. In addition, they relied on, I guess, their expert, Dr. Cai, annotation of a figure showing, et cetera. You're claiming that was new argument or new evidence? The annotated figure, yes. In the petition, the only thing that they relied on was – The issue here is Milbrandt – our claims require measuring certain parameters on a sub-frequency basis. There's another claim that requires measuring certain parameters during showtime. Milbrandt does not disclose either of those two concepts. It does not disclose measuring any power parameters on a sub-channel basis. It also does not disclose anything about showtime. Instead, it discloses – it uses other words. No, and the board didn't miss that. The board addressed that in suggesting that in Milbrandt, it was clear from their reading of Milbrandt that the use of sub-frequency, even though it's a different word, it's the same disclosure. Yes, Your Honor, and therein lies the problem, is what was the board's basis for finding that? Literally, the only basis they had for finding that was the conclusory say-so of Petitioner's Expert. And Petitioner's Expert did not provide even an explanation for why he believed that to be so. He just said, they are the same, period, in the petition. On reply, he came back and provided more explanation for why he believed that showtime and during operation are the same thing. During operation is what Milbrandt referred to. Well, I'm looking at the board's opinion, and it's late there. I'm already at Appendix 93, but it seems to be not just discussing the expert's testimony, but it's talking about Milbrandt itself, right? Yes. There's a lot of discussion of the disclosure of Milbrandt outside of what the expert said, right? Yes, Your Honor, but simply saying, recognizing that Milbrandt uses the words sub-frequency is not itself evidence of anything. Milbrandt uses the word sub-frequency, so the issue is, is sub-frequency the same thing as sub-channel? Milbrandt itself, the only thing that Milbrandt says, in fact, points to the fact that they are not the same. For example, in one instance, Milbrandt specifically uses the word sub-frequency in an instance where we know for a fact it cannot be referring to a sub-channel. Now, the board brushed that away by saying, well, Milbrandt must have been using the word sub-frequency differently in different situations. Again, just citing to where Milbrandt uses the word sub-frequency, but that is not evidence of what Milbrandt meant by that word sub-frequency, whether Milbrandt was using that word to mean the same thing as the same claim sub-channel. That our challenge is the fact that the board's only basis for its decision is citing to what Milbrandt said, which, again, is not what the claimed invention is, and then citing to the petitioner's expert proclaiming that they're the same thing. So they didn't just have the expert in front of them. They also had Milbrandt in front of them, right? Yes. So why do you act as though the PTO made this decision based on a conclusory statement by the expert when they actually had the reference in front of them, and the reference has language in it that arguably can support their conclusion? Well, because... So why is that, among other things, a due process problem? Well, we're not proclaiming due process on that. There the issue is that there's no substantial evidence to support the board's finding. Well, there's a sentence in column 11 that says each sub-frequency is an independent channel and supports transmission of its own stream of data signals. Why doesn't that, taken out of context, fully support what the board concluded? Exactly, but there's still a dispute as to what does that mean. But here's your problem. I'm just going to tell you. I'm just going to be completely honest because I wear everything on my sleeve all the time. That's the way I am. I would have found this case in your favor if I were the fact finder. I think Milbrandt is awfully confusing about what it's using these words to mean. But my standard of review is substantial evidence. There are sentences in this patent that support what the PTO concluded about what Milbrandt was disclosing on channel and sub-frequency. I'll be honest. I'm an electrical engineer. I have trouble understanding what they mean. I think they're maybe even internally inconsistent within the patent, but at best confusing about what they mean. Yes. So if I am not reviewing it de novo, which I'm not, because this is what does a prior art reference disclose, I'm reviewing it for substantial evidence, and there are sentences which, standing alone, seem to support exactly what the PTO concluded, even though there's other sentences that don't, how in the world do I find it in your favor? I don't. I can't. That's where we are. There's where I am. Well, Your Honor, with respect to that instance, it doesn't say that the sub-frequencies are sub-channels. It says that each sub-frequency is an independent channel. So the issue is what does that mean? Either the board was relying on its own expertise, which was improper, or the board was relying... No, I disagree with you. I don't think the board relying on its own expertise is improper. They're interpreting what does this disclose to a artisan skilled in the field. So they have to bring a little bit of that to the table. They don't have to... There are cases we get where there is no expert testimony. Are you saying the board is improper for looking at the reference and telling me what it would teach to a skilled artisan in the field simply if there's no expert present giving testimony on it? No, Your Honor, because, for example, if the prior art reference expressly disclosed the claim limitation, that's something that can be easily determined. Here it does not expressly disclose sub-channels. It does use the word sub-channels in other instances that are different than sub-frequency, just referring to transmitting data on a sub-channel basis. And if anything, that, again, also seems to suggest sub-frequency and sub-channel are two different things. But here it's an issue... It's more like inherency. What about column 10 at the bottom? We'll start line 58 and go through roughly line 65. That also seems to support the board's determination about what these things mean. Again, I think this isn't... I think there's no dispute that Milbrandt does not use the word sub-channel in terms of discussing what's being measured. It uses the word sub-frequency. And so the board pointed to sentences where Milbrandt is using the word sub-frequency. And they're saying, you know, we take that to mean that as a technological matter he's referring to sub-channels. But, again, it's just... No, but Milbrandt said sub-bands or channels. I mean, how much of a leap is it for the board to say that that means what they think it means? I mean, not much of a leap. You can't win on that argument on a substantial evidence review. Well, again, then the issue is where is the evidence that that reference to sub-channels or bands is the same thing as the claim sub-channels? What do you mean, where is the evidence? It is the evidence. I mean, the reference is a piece of evidence. And the board is telling me what that piece of evidence discloses and I review it for substantial evidence. So even if I might not have construed it the same way they did at the outset, this isn't a NOVA review. All right, well... Why don't you move on to your other arguments? I think a clear example, Your Honor, might be the during showtime limitation. There the issue was Milbrandt only discloses measuring certain parameters during operation. The issue is, is that during showtime, as claimed in our patent? There, again, it started with Petitioner's Expert just proclaiming that during showtime was the same thing as the claimed... I'm sorry, during operation was the same thing as the claims during showtime. But Milbrandt never says that. In one instance, we know for a fact that when he says during operation, he is not referring to during showtime because he specifically is referring to modem training. The board said, well, okay, in that instance, Milbrandt is ambiguous. But then how did the board find that the other instances where Milbrandt said during operation that that was during showtime? You're way beyond your time. Oh, I'm sorry, Your Honor. Can I just ask you one quick question that goes back to where exactly I started, which was on the standard of review for what the board did. Yes, Your Honor. At page 60 of Blue Brief, you talk about the board's... The only standard that I can find that you articulate in blue is the board abuse of its discretion and how it addressed and ruled on patent owners' objections. We cited... I see you cited in re-invasive in gray, but not in blue as far as I can tell. And you were using an abuse of discretion standard in your arguments in blue. Am I right about that? So we did cite to in re-invasive that... So the issue of whether or not... In blue? I didn't see... Let me see where in re-invasive is. It's not listed in the table of authorities in blue. Unless I'm missing something. Certainly it's in gray. Yes, Your Honor. It may not be cited in the Blue Brief. And the sentence I read from 60 is accurate, right? That you said the board abused its discretion. It did abuse its discretion with respect to the fact findings, and it should be an over-review with respect to whether or not new arguments were improperly allowed or with respect to the due process violations. Thank you, Your Honor. We'll restore a little rebuttal time. Let's hear from the other side. Mr. Foster. Good morning. May it please the court, Theo Foster for Appalese. I'd like to begin with the discussion of due process and pick that up. Even if the proper standard of review was de novo, the appellant here has not identified any particular argument or piece of evidence that they believe was improperly considered by the board. I would note, for example, that, as they mentioned, the board allowed TQ Delta to provide a listing of all of the arguments in the petitioner's reply that it believes were improper. I'm confused about the word argument because it can be used in different contexts. My understanding is it did not allow them to make arguments, but it did allow them to list what they thought was improper or outside of the petition rights. Those two separate? Yes. Two different things. Judge Prost, you are absolutely correct. They were allowed to submit a listing identifying portions of the petitioner's reply that they believed were improper. And they did that? And they did that. That document is not in the joint appendix. They have not relied on any of the arguments that they previously identified or the portions of the petitioner's reply. What do you understand their argument to be? The listing was insufficient and they should have been allowed, again, I'm going to use the second argument, to make arguments with respect to those items, right? Yes. As I understand their argument, they're arguing that essentially a patent owner is entitled to a SIR reply in all instances, that it was improper for the board to consider the petitioner's reply at all. So what standard does the board have? Does it have to determine that no, these weren't new arguments because they were already included in the petition? So is that the standard that we're reviewing? Were these in the petition? I'm just not clear on what the standard that the board ought to be using is. My understanding of the standard that the board uses, and this relates back to the rules governing IPR, is that the petitioner's reply is allowed to present argument and evidence in response to points raised by the patent owner's response. And so as long as the petitioner is responding to arguments and issues and evidence put forward by the patent owner, then that is proper. And so this is why a petitioner is not locked into statements in their petition in the sense that if they say one word that's different than what was in the petition, that they're out of line. That can't be the standard because it would render the petitioner's reply kind of a ridiculous filing. But the standard is that if there's something new that the petitioner comes up with, new and different, I guess, then there is an opportunity for a third reply. Or alternatively, they can't put in anything new and different. That's correct. And it's the question of being new in the sense of a different prior combination. If the response to, well, you didn't like the obviousness combination that was in the petition, here's a new prior reference. That's responsive in some sense, but that's clearly new and is improper. And so that's where the dividing line is. Wait, no, that's not where the dividing line is. The dividing line, a new argument can be a different embodiment within the same reference. If you only refer to pages two through five in a particular embodiment within a reference as disclosing an element, and it's concluded that element's not disclosed there, the petitioner can't reply and say, okay, well, then look at page 57 to 58, which is a whole different embodiment. That one does. That would be the same reference, but that would still be the kind of new argument that shouldn't be permitted or should at least permit a reply. Yes, that... That's pervasive. Your example, Judge Moore, would be... Well, it's the case I've already decided. So, yes, you didn't describe the line correctly because the line has been drawn further than you just drew it. Yes, Judge Moore. A new embodiment being raised, which then is really more of a new ground, even if it is the same reference, would be an improper new argument. Here, I don't understand the appellant as identifying the petitioners as having done anything like that. We're relying on the same text from Milbrandt in column 10 that we did in the petition with respect to showing that sub-frequencies are properly understood to be sub-channels. So, it's really a question of due process, is it not? And to assure, and for us to assure, that the board here, they're supposed to substitute for the district court not to bring a fresh bureaucratic layer of rigidity. So, when there is a question of whether there are or aren't new arguments, shouldn't there be an obligation on the board to see that all arguments are brought forth and considered so that the final decision has the substance that this entire procedure is supposed to impart? Yes, Judge Newman, I agree. And this court has said that one of the purposes of the trial portion of the proceeding is for the admission of evidence and the development of argument. The institution phase has initial arguments put forward by each party, but then there's the trial phase, developing the evidence, developing the arguments, and bringing them to a point at the oral hearing before the board. And so, you're correct that the final written decision is supposed to look back across all of the evidence put forward and the arguments put forward by the parties and make a judgment based on that. So, you're satisfied as to whose obligation it is in this give-and-take before the board to make sure that there are no inappropriate barriers imposed by the agency when their procedure is supposed to be more open, if anything, than that in a district court? Well, I mean, the board has many things that it has to consider, and among them is the statutory mandate for issuing its final written decision in one year. And so, that is a limitation on its ability to be flexible. And so, whereas a district court could move deadlines or extend a case, the board doesn't have that kind of flexibility. So, it has to have reasonable rules in place to ensure that it can meet those deadlines, and I think the board has done that with its rules. And we've seen the board adapting them over time, but the suggestion that the appellants are bringing in this case that every case decided before there was a surreply by the patent owner allowed as of right, that every case decided before that was in violation of the patent owner's due process rights. No, no, no, that's a little extreme. They're not exactly saying every case. They're talking about these circumstances, and they're making an argument. We may reject the argument, but their argument isn't in every case they have it as a matter of right. It's based on the circumstances here, and they're making an argument that these were new arguments, so they should have had an opportunity to present argument that they were new arguments. So, it's a little overstatement, right? I may have read their brief as being a little bit more aggressive with their position, but certainly as far as today's proceeding is concerned, limiting it to the facts of this case is appropriate. Why don't you turn to a little about what the reference, there's some discussion with your friend on Milbrandt. Yes, so Milbrandt and Mr. Scharf raised two issues with that. I'll take up the during showtime limitation first. The board cited and relied on Milbrandt's teaching that it gathers measurements of the subscriber line performance, quote, while providing data services to subscribers, close quote. That's from Milbrandt in column 10, some of the lines, Judge Moore, that you highlighted earlier. And Milbrandt explains what it means by data services. That's in column nine. Data services include things like video on demand, multimedia applications, and providing internet access. That is the substantive end user data communications that occur when you have a DSL modem engaging in normal communications. That is showtime. I don't think there's any argument that DSL modems provided video on demand service during initialization. So what Milbrandt is teaching here by providing data services and at the same time taking those line measurements and that integration is something that it specifically touts as an advantage. That's in the sentence bridging column six and seven. Milbrandt is describing taking these line measurements during the normal communications of a DSL receiver, which is the board's construction of during showtime that neither party is challenging. Regarding the other aspect of Milbrandt and Judge Moore with respect to sub-frequency that you indicated at least some concerns over what the board did but on substantial evidence review don't see a way to find in favor of the appellant here. I think for the appellees, Milbrandt's disclosure is sufficiently clear the way it's describing each sub-frequency as an independent channel and saying that there are many such individual channels and that each of those uses quadrature amplitude modulation to transmit data. That's quite consistent with what we're looking at in the 412 and the 956 patents. Quadrature amplitude modulation on a per sub-channel basis is actually in the claims. So that's the disclosure of using quadrature amplitude modulation on each channel or sub-frequency is consistent with that claim language. And then also if we look at, for example, the background of the 956 to the 412 patent where it describes how this DSL technology is working and put some further information on what it means by a sub-channel. It's describing modulating data onto a multiplicity of discrete frequency carriers which are then summed together. And those carriers form discrete non-overlapping communication sub-channels of limited bandwidth. And that's in the first column in the background section of the patents. So the discussion here in the background of a sub-channel being a discrete communication device that's independently modulated is entirely consistent with Milbrandt's description of a sub-frequency, which is modulated using quadrature amplitude modulation and which is an independent and supports transmission of its own data stream. So I believe that the evidence is there from Milbrandt itself showing the consistency between sub-frequency and sub-channel. Judge Moore, with respect to your concern about Milbrandt's use of the word sub-frequency and whether other minds might disagree as to its clarity, I would note that we have testimony from three experts in this case and in this record. Dr. Kiai from Petitioners and Dr. Chrissan and Dr. Short for TQ Delta. And all three of them testified that in this technology space, there's some looseness, if you will, with respect to terminology and that there are a variety of words that get used to identify these individual carriers of the multi-carrier communication link. The words carrier, sub-carrier, channel, sub-channel, sub-band, frequency, that all of these are words that are used to describe that same concept and that, although in particular instances, they might have a slightly different meaning, they frequently are used interchangeably. And so I think it's not surprising to see Milbrandt is using another term here, which it analogizes to sub-band and channel, which are words that the three experts all agreed are interchangeable with sub-channel. I don't think it's surprising to see yet another word being used by an inventor in describing their invention here, Milbrandt, to describe this very same concept. Are there no further questions? Thank you. We'll restore two minutes of your time. Thank you, Your Honors. Your Honors, petitioner's oral argument has evidenced that they're not relying just on new arguments that were presented for the first time in their reply brief in the IPR, but also new arguments that they've raised for the first time on appeal. For example, petitioners discussed this argument as to why Milbrandt supposedly discloses during showtime. They cited to column 10 of Milbrandt where he discusses while providing data services. That was not an argument that was raised below in the IPRs. And they still have no evidence on that. They have only attorney argument that that statement in Milbrandt somehow means showtime, when there's no evidence that providing data services cannot also mean initialization. Initialization of a modem is a data service. They also raise a new argument with respect to Milbrandt's disclosure of subchannels. A new argument for the first time on appeal that because Milbrandt discloses the concept of modulating data for transmitting data on a subchannel basis, that he must have meant the same thing when he was discussing how he measures tester diagnostic parameters. Understanding how you measure a parameter does not have to be the same as how you are transmitting data. That was another new argument, in reply, relying just on attorney argument. Then there are a couple of strawman arguments, kind of putting some words in our mouth. They argue that we believe... Out of curiosity, did you argue that they waived all of these arguments they made in the red brief by not raising them below in your gray brief? We did, yes, Your Honor. In that... We specifically believe it was in a footnote here. Page 7, footnote 5. Thank you, Your Honor. Yeah, but page 7, footnote 5 isn't an argument that they waived something. Page 7, footnote 5 is an argument suggesting that the board erred to the extent it found that modem training was used in an idiosyncratic manner. Yeah, yes, Your Honor. It's page 8. It's where it says, sixth, none of petitioners' new arguments made for the first time in their reply. This is where we address... is addressed near the bottom of that paragraph. I thought I was looking at the footnotes. You're saying... I'm sorry, Your Honor. It was in the body of the brief. Page 8 of our reply brief, the paragraph beginning sixth, none of petitioners' new arguments made for the first time in their appellate response. That was where we addressed the new arguments that they made. So you think that parenthesed comment made for the first time in their appellate response should have clued us in that you were suggesting those arguments should be deemed by this court to be waived as a matter of law for not having been raised below? Yes, Your Honor. I apologize if we didn't make that clearer. Because you can waive waiver. You know that, right? You can waive waiver. Yes, Your Honor. Well, and then the second argument, their new argument with respect to the subchannel that it's based on Milbrandt's disclosure of how data is modulated, that was an argument that they did not even make in their briefs. That was an argument that I heard for the first time here at Oral Argument. And so that is also an improper new argument. You're beyond your time. Thank you, Your Honor. Okay, thank you. We thank both sides and the case is submitted.